## WILSON ATHLETIC GOODS MFG. CO. v. NATIONAL LABOR RELATIONS BOARD.

### No. 9370.

Circuit Court of Appeals, Seventh Circuit.

Nov. 18, 1947.

Richard C. Winkler and John L. Cockrill, both of Chicago, Ill., for petitioner.

Gerhard P. Van Arkel, General Counsel, A. Norman Somers, Ass't General Counsel, Fannie M. Boyls, Atty., David P. Findling, Associate General Counsel, Ruth Weyand, Acting Ass't General Counsel, and Thomas B. Sweeney, all of Washington, D. C., for respondent.

Before MAJOR and KERNER, Circuit Judges, and BRIGGLE, District Judge.

MAJOR, Circuit Judge.

This case is here upon the petition of Wilson Athletic Goods Mfg. Co., Inc., to review and set aside an order of the National Labor Relations Board issued against petitioner on April 30, 1947, pursuant to § 10(c) of the National Labor Relations Act, 49 Stat. 449, 29 U.S.C.A. § 151 et seq. The Board in its answer to the petition requested enforcement of its order.

On July 30, 1946, the Board issued a complaint, alleging that petitioner had refused to bargain collectively with Textile Workers Union of America, C.I.O. (hereinafter called the Union). On August 5, 1946, petitioner answered, denying that it had engaged in any unfair labor practices. Following the usual proceedings, the Trial Examiner issued his intermediate report, finding that petitioner had engaged in the unfair practices charged. Thereafter, on April 30, 1947, the Board issued its decision and order adopting, so far as here material, the recommendations of the Trial Examiner, and ordered petitioner to cease and desist from its unfair labor practices, to bargain with the Union upon request and to post appropriate notices.

The jurisdiction of the Board is conceded, and it is not in dispute that the unit established by the Board for the purpose of collective bargaining was appropriate. The sole contested issue is whether the Union properly represented a majority of employees in an appropriate Union so as to entitle it to the right to bargain for such employees. The petitioner's contention is that the Union was not so entitled because it was certified to by the Board as the result of an election wherein the Union in a preelection campaign used fraudulent, illegal

and unfair methods for securing votes in such election.

Pursuant to a decision and direction of election (66 N.L.R.B. 263) issued by the Board, a secret election was held among petitioner's employees of an appropriate unit. The tally of ballot disclosed that there were 57 eligible voters, of whom 51 voted, and that 32 votes were cast in favor of and 19 votes against the Union. Petitioner filed no objections to the conduct of the election and on April 9, 1946, the Board certified the Union as the exclusive bargaining representative of all the employees within such unit. The Union on several occasions sought without success a conference with petitioner for the purpose of bargaining. On June 25, 1946, petitioner stated in writing that the "Union never did and still does not represent a true majority of the employees * * * due to the method used by the Union in its pre-election campaign to secure members." Again, on July 23, 1946, following the receipt of notice that the Union had filed an unfair labor practice charge, petitioner wrote the Board and gave substantially the same reason for refusing to bargain. It took the same position before the Trial Examiner and the Board, and now seeks to justify such position before this court.

It should be noted that there is no attack upon the manner in which the election was conducted. In fact, representatives of petitioner and the Union certified to the Board in connection with the report of the Regional Director concerning the election that "The undersigned acted as authorized observers in the counting and tabulating of ballots indicated above. We hereby certify that the counting and tabulating were fairly and accurately done, that the secrecy of the ballots was maintained, and that the results were as indicated above."

■ The Examiner, sustained by the Board, refused to admit testimony offered by petitioner which it contended would invalidate the election. The Board in its decision concerning such testimony stated: "We have considered the respondent's contentions and offer of proof, and find them to be without merit. Assuming that the respondent were able to prove all the facts which it specified in its offer of proof, these facts do not suffice to nullify the election results." We suppose no authority need be cited in support of the proposition that no error was committed in a refusal to admit immaterial evidence or evidence which would not have changed the results had it been admitted.

Petitioner, as the reason for its refusal to bargain, in its brief states: "The Union in its pre-election campaign for members, misled the employees of petitioner by illegal and fraudulent statements and promises and, relying upon the erroneous, fraudulent and illegal promises and statements, a majority of petitioner's employees did vote in favor of this Union."

■ The excluded evidence which petitioner relies upon in support of its contention is summarized in its brief thus: "Subsequent to the election held on March 22, 1946, and after the time had expired for the Company to file objections to the conduct of the election and to the election results, more than a sufficient number of employees to affect the results of the election voluntarily came to petitioner's management representatives and stated that they were misled and relying on these misrepresentations had erroneously voted for the Union in the election; that the Union had made them promises of a thirty cents (30¢) per hour wage increase; that the Union had told them that they must sign a Union membership card in order to be eligible to vote (although the Board eligibility is based solely on working in the prescribed bargaining unit on a certain payroll date), and that signing such a membership card did not make them Union members."

The assertion that the Union promised a 30¢ per hour wage increase is an overstatement. The circular which petitioner offered in evidence and which was distributed by the Union prior to the election states: "In one of your plants in Schenectady, we are negotiating for a 30-cent-an-hour increase. We could do the same in Buffalo [the plant involved herein] if you vote for the C.I.O." Petitioner's plant manager testified that a day or two before the election he had in his possession a copy of this circular. No objection was made in the representation proceeding to the alleged misleading character of the statement. More than that, we fail

640

to discern its impropriety. It was a mild and temperate promise when contrasted with the promises to which the public is accustomed, over the radio, from the platform and in the public press by candidates and others in every political campaign.

█ Of course, a statement that the employees must sign a Union membership card in order to be eligible to vote was not true. All employees of the appropriate unit were entitled to participate in the election. However, the only effect, if any, which might be ascribed to such statement would be that employees refrained from voting because they had not signed such a card. There were only six eligible voters who did not participate in the election. If those six had participated and had voted against the Union, the result still would have been 32 votes favorable to the Union and 25 against. The statement, therefore, could not have affected the result of the election.

█ The statement that signing a membership card did not make the employees members of a Union might or might not be a true statement. We suppose this would depend upon the Union's rules, prescribing the manner as to how and the time when an employee could become a member. But whether true or false, it had no relevancy to the right of an employee to participate in the election and cast a free ballot.

█ We think the Board has discharged its full duty if it provides an election, surrounded with the usual safeguards, where the employee is permitted to cast a ballot in secrecy and have it counted as cast. To permit employees, subsequent to such election, to testify, as was attempted to be done in the instant case, that they cast a ballot contrary to that which they intended because of false pre-election promises, would destroy the stability which an election was devised to produce.

Furthermore, we have serious doubt if petitioner was entitled in the instant proceeding to challenge the validity of the election on the grounds asserted. See N.L. R.B. v. A. J. Tower Co., 329 U.S. 324, 67 S.Ct. 324. And the fact that we have considered petitioner's contention on its merits is no indication that we think it had a right to do so.

The petition for review is denied and the Board's request for enforcement of its order is allowed.