NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

BEN DUTHLER, INC. and Family Foods,
Inc., Respondents.

No. 17698.

United States Court of Appeals
Sixth Circuit.

May 23, 1968.

Peter Ames Eveleth, N.L.R.B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Lawrence M. Joseph, Atty., N. L. R. B., Washington, D. C., on the brief), for petitioner.

Eugene Alkema, Grand Rapids, Mich. (Varnum, Riddering, Wierngo & Christenson, Grand Rapids, Mich., on the brief), for respondents.

Before EDWARDS, CELEBREZZE and McCREE, Circuit Judges.

CELEBREZZE, Circuit Judge.

The National Labor Relations Board petitions for enforcement of its order entered against Ben Duthler, Inc., and Family Foods, Inc., on February 24, 1966. The cases against the Respondents were consolidated in one complaint alleging violation of Section 8(a) (1), and (5) of the Labor Management Relations Act, 29 U.S.C. § 158(a) (1) and (5). After a full evidentiary hearing, the Trial Examiner rendered a decision finding Duthler and Family Foods guilty coercive interrogations of their em- of violating Section 8(a) (1) by certain ployees and threats made to their employees and guilty of violating Section 8(a) (1) and (5) by refusing in bad faith to bargain upon request with Retail Employees Union Local 20 and Local 36, respectively, who claimed to represent a majority of their respective employees. Only the findings of bad faith refusal to bargain were contested before the Board, which sustained the Trial Examiner's order as to Ben Duthler, Inc., but dismissed the Section 8(a) (5) allegation concerning the refusal of Family Foods to bargain with Local 36. In addition to issuing a cease and desist order, the Board ordered Duthler to bargain with Local 20 upon request as the exclusive bargaining representative of its employees.

Since the finding of Section 8(a) (1) violations so far as it relates to coercive interrogations and threats was not contested before the Board, Section 10(e) of the Act precludes this Court from considering or modifying the Board's order in that respect. National Labor Relations Board v. Ochoa Fertilizer Corp., 368 U.S. 318, 82 S.Ct. 344, 7 L.Ed.2d 312 (1961); National Labor Relations Board v. Ohio Car & Truck Leasing, Inc., 361 F.2d 404 (6th Cir. 1966). Therefore, only two questions are before this Court: (1) Does substantial evidence on the record as a whole support the Board's finding that Duthler refused in bad faith to bargain with Local 20? (2) Is the Board's bargaining order proper under the circumstances of this case? We answer both questions in the negative and deny enforcement of the Board's order so far as it relates to Duthler's alleged Section 8(a) (5) violations.

Duthler's Good Faith Doubt:

Respondents in this case are Michigan corporations operating retail food stores. Ben Duthler, Inc., operates a store in Grand Rapids, Michigan. Family Foods, Inc., operates a store that opened on September 1, 1964, in Kalamazoo, Michigan. Although the Respondents are separate corporations, Ben Duthler and Ronald DeYoung are, respectively, the President and the Vice President of each. The incidents pertinent to a decision in this

case occurred in relation to the efforts of Local 20 to organize the employees of the Grand Rapids store.

Organizational efforts were begun by Local 20 in late July or early August, 1964. As the result of a meeting between International Representative Vander Werff and certain of Duthler's employees on August 6th, Local 20 filed a petition for a representation election on August 14, 1964. Efforts were continued to obtain authorization cards, and on August 25th Mr. Vander Werff, claiming to represent a majority of Duthler's employees,[1] requested Mr. Duthler to recognize Local 20 as the exclusive bargaining representative of the employees of Ben Duthler's, Inc. Mr. Duthler refused to make any commitment until he had consulted with his attorney; so a meeting was set for the next day. After consulting with his attorney, Mr. Duthler refused to recognize Local 20 and would not consent to a card check, stating that the election, which was to be held on October 2nd, would better determine the desires of his employees. On August 27th, a letter was sent to Duthler by Local 20 again requesting recognition. Duthler did not reply to the letter, and during the period of August 6th to October 2nd, the Board found that Duthler committed several 8(a) (1) violations. Although the Board found that forty-four valid authorization cards were signed as of August 27th, Local 20 lost the election of October 2nd by a vote of 27–43.

■■ In considering a charge of unlawful refusal to bargain, we start with the principle that the General Counsel has the burden of proving bad faith. National Labor Relations Board v. River Togs, Inc., 382 F.2d 198, 206 (2d Cir. 1967); National Labor Relations Board v. Great Atlantic & Pacific Tea Company, 346 F.2d 936 (5th Cir. 1965); Lane Drug Co. v. National Labor Relations Board, 391 F.2d 812 (6th Cir. 1968). The Board in the instant case relied solely upon Duthler's Section 8(a) (1) violations to establish a bad faith attempt to undermine an existing union majority. Yet this Court has held repeatedly that an employer may have a good faith doubt concerning a union's majority status even though the employer is found guilty of unfair labor practices in connection with the union's organizational campaign. Montgomery Ward & Co. v. National Labor Relations Board, 377 F.2d 452 (6th Cir. 1967); Peoples Service Drug Stores, Inc. v. National Labor Relations Board, 375 F.2d 551 (6th Cir. 1967); Lane Drug Co. v. National Labor Relations Board, 391 F.2d 812 (6th Cir. 1968), supra. Other Circuits have recognized the same principle. National Labor Relations Board v. River Togs, Inc., 382 F.2d 198 (2d Cir. 1967); National Labor Relations Board v. S. S. Logan Packing Co., 386 F.2d 562 (4th Cir. 1967). In each case the Section 8(a) (1) violations must be considered in relation to other evidence in the record concerning the employer's good faith doubt.

■■ The rationale for relying upon Section 8(a) (1) violations as indicating a lack of good faith is that such actions of an employer raise an inference that he "has completely rejected the collective-bargaining principle or seeks merely to gain time within which to undermine the union and dissipate its majority." John P. Serpa, Inc., 155 NLRB 99 (1965). The Board's rejection of the Section 8(a) (5) charge against Family Foods clearly shows that the officers-in-common of the two corporations had not rejected the collective-bargaining principle, and we

---

1. The Respondent-Duthler devotes much of its argument to contesting the findings of the Board concerning the number of employees in the appropriate unit and the number of valid authorization cards. For the purposes of a decision in this case, however, we accept the Board's findings, which were:

| Date | Employees in Unit | Valid Cards |
|---|---|---|
| August 25th | 80 | 41 |
| August 26th | 80 | 43 |
| August 27th | 81 | 44 |

do not consider the type of Section 8(a)(1) violations found in the Grand Rapids organizational campaign as indicative of a mere attempt to undermine an existing union majority. Other evidence in the record presents several judicially recognized bases on which Duthler could justify its good faith doubt of Local 20's majority status.

 Although the Trial Examiner found that Duthler's refusal to bargain on August 25th was a violation of the Act, the Board only found the August 26th and 27th refusals as violations of the Act.[2] Between the meetings on August 25th and August 26th Mr. Duthler consulted his attorney, who knew that Local 20 had filed a petition for election on August 14th and who knew that Consolidated Independent Union Local 951 had expressed an interest in organizing the Grand Rapids employees and that Local 951 had so informed the Board. In addition, the agreement that Mr. Vander Werff asked Mr. Duthler to sign would lead any attorney to question the motives and methods of the union seeking recognition. The Trial Examiner accurately described the agreement:

> "This agreement, as drafted, is so ambiguous and unintelligible as to be worthless. No responsible employer could sign such an agreement and why any labor organization, after 35 years of experience under the Labor-Management Relations Act and its various amendments, should ever have drafted such an agreement passes comprehension."

Upon the basis of this information Mr. Duthler's attorney advised him to let the election determine the union's representative status.

 The Trial Examiner refused to consider this evidence because it was not clear that Mr. Duthler was aware of any of these events and because Mr. Duthler had had no previous experience with unions. Such reasoning ignores the only purpose Mr. Duthler's consultation with his attorney might serve: to benefit from the attorney's knowledge of the situation and his experience and expertise in labor matters. Whatever knowledge and experience his attorney had must be attributed to Mr. Duthler, who acted in accordance with his attorney's advice.

 This Court has held that an employer who is aware that two unions are competing to represent his employees can properly entertain a good faith doubt as to the majority status of either union. *Pizza Products Corporation v. National Labor Relations Board*, 369 F.2d 431 (6th Cir. 1966). The doubt that an employer might entertain in these circumstances was strengthened in the instant case by the union representatives' less than straightforward conduct reflected in the proposed agreement form. The "hurried procedure of the union in attempting to gain recognition" and the failure of the union to clearly designate the employees whom it sought to represent would justify Duthler's looking. " * * * upon the union's claim of representing a majority of its * * * [employees] with skepticism * * *." *Lane Drug Co. v. National Labor Relations Board*, 391 F.2d 812 (6th Cir. 1968) supra. Duthler's refusal to submit to a card check does not negate the effect of this evidence since an employer is not required to submit to a card check or suffer the consequences of a refusal to bargain charge. *Peoples Service Drug Stores, Inc. v. National Labor Relations Board*, 375 F.2d 551 (6th Cir. 1967) supra.

 Besides the weakness of the inference of bad faith that Section 8(a)(1) violations might raise, *National Labor Relations Board v. James Thompson*

2. A finding of unlawful refusal to bargain on August 25th would probably not be sustainable in any case. As the Second Circuit noted in *National Labor Relations Board v. River Togs, Inc.*, 382 F.2d 198 (2d Cir. 1967), supra, " * * * even if [an employer] *does not doubt the union's [claim of majority representation] * * *, he is entitled to find out something about the circumstances."* 382 F.2d at 206

& Co., 208 F.2d 743 (2d Cir. 1953), the violations committed in the instant case were not the flagrantly coercive type that might properly show a complete rejection of the collective-bargaining principle on the part of the employer. Since these violations were the only evidence in the record to support the Board's finding of an unlawful refusal to bargain, we hold that this finding was not supported by substantial evidence on the record as a whole. Since we find that Mr. Duthler had a good faith doubt of the majority status of Local 20, Ben Duthler, Inc., cannot be found guilty of an unlawful refusal to bargain even though Local 20 actually represented a majority of the employees at the time of the demand. Peoples Service Drug Stores, Inc. v. National Labor Relations Board, 375 F.2d 551 (6th Cir. 1967) supra. We therefore deny enforcement to the portion of the Board's order related to that violation.

Order to Bargain With Local 20:

 The Board's order compelling Duthler to bargain with Local 20 presents the question of the propriety of such an order when an employer's 8(a) (1) violations have vitiated a representation election in which the union was unsuccessful. Although authorization cards have been recognized as "notoriously unreliable" and an order to bargain on such cards has been described as "strong medicine", National Labor Relations Board v. Flomatic Corp., 347 F.2d 74 (2d Cir. 1965), this Court does recognize that authorization cards have validity and, in appropriate cases, this Court has approved bargaining orders based on such cards. National Labor Relations Board v. Winn-Dixie Stores, Inc., 341 F.2d 750 (6th Cir. 1965); National Labor Relations Board v. Cumberland Shoe Corporation, 351 F.2d 917 (6th Cir. 1965); National Labor Relations Board v. Nelson Manufacturing Co., 326 F.2d 397 (6th Cir. 1964); National Labor Relations Board v. Austin Powder Company, 350 F.2d 973 (6th Cir. 1965). The validity of authorization cards for the purposes of a bargaining order, however, depends upon the circumstances of each case, requiring an *ad hoc* investigation to determine if the Board has abused its discretion in fashioning a remedy, but with due regard for the discretion permitted the Board in fashioning a remedy, National Labor Relations Board v. Sehon Stevenson & Co., 386 F.2d 551, 554–557 (4th Cir. 1967) (concurring opinion).

 In evaluating the evidence, two values are of paramount consideration: the right of employees " * * * to bargain collectively through representatives of their own choosing * * * [or] to refrain [from such bargaining] * * *." 29 U.S.C. § 157; and the need to deter employer unfair labor practices. See National Labor Relations Board v. Sehon Stevenson & Co., supra, at 557. The inquiry should be directed to a determination of whether a re-run election or the cards will more reliably indicate the desires of the employees or whether a re-run election will be contaminated by the prior violations, thus giving the employer the benefit of his previous unlawful conduct. Pertinent considerations are the nature of the Section 8(a) (1) violations, the percentage of employees signing authorization cards, the wording of the cards and the method of soliciting signatures, and the results of any Board election.

 The primary responsibility for evaluating the particular considerations, however, lies with the Board; and where on substantial evidence the Board concludes that a company's illegal interference with its employees' rights to organize and bargain collectively caused the loss of majority status by a union, it has discretion to fashion an effective remedy (including a bargaining order) to restore the status quo ante. Franks Bros. Co. v. National Labor Relations Board, 321 U.S. 702, 64 S.Ct. 817, 88 L.Ed. 1020 (1944); National Labor Relations Board v. Atco-Surgical Supports, Inc., 394 F.2d 659 (6th Cir. 1968); National Labor Relations Board v. Delight

Bakery, Inc., 353 F.2d 344 (6th Cir. 1965). Our problem with this bargaining order is that we do not find substantial evidence to support the conclusion that Duthler's Section 8(a) (1) violations caused the union to lose majority status.

As indicated earlier, the Section 8(a) (1) violations committed by Duthler were not the flagrant kind. No employees were discharged; no threats were made of moving the stores or closing the stores; and no employee was repeatedly or directly threatened by the employer or supervisory personnel. The statements of the employer and supervisory personnel that were found to be violations were the borderline type of statements between legitimate comment and "veiled threats", where the Courts generally defer to the expertise of the Board but where the coercive effect on the employee is slight. Any lingering effect of these actions of Duthler should be completely dissipated by the usual postings required by the Board. So in a re-run election Duthler will not benefit from any past violations. Also in the Family Foods-Local 36 dispute, which concerned the same employer, the Board's findings clearly show that Mr. Duthler has not rejected the principles of collective bargaining. Therefore, the need to deter employer unfair labor practices would not justify a bargaining order in this case.

More importantly, the narrowness of the card majority, the method of signature solicitation, and the overwhelming rejection of the union at the representation election make it abundantly clear that a re-run election is the only manner in which the desires of the employees can be reliably determined in this case. Local 20 obtained signatures from barely 54% of Duthler's employees, 44 out of a unit of 81 employees, after more than a month of concentrated organizing efforts. Even the cards obtained were questioned by the Trial Examiner, who remarked:

"Vanderwerff's (sic) own testimony as to his method of soliciting cards does little to establish their authenticity, however. Vanderwerff stated:

'When I approach an employee, the first thing I tell them is to get their name on it, and at this time we have the petition for election and the important thing for us, many times hurry up and put your name on it.' "

Additionally, the evidence shows that several of the employees signed cards only after being told that even after signing they would have a chance to vote on the union at an election. On this evidence the Trial Examiner expressed "some misgivings" concerning the cards; and in light of this evidence, we find that the overwhelming rejection of Local 20 at the representation election makes these cards totally useless in establishing the representative status of that union.

A bargaining order at this stage might greatly impair the Section 7 rights of the majority of Duthler's employees, who voted against Local 20 but who might feel compelled to be a member of their *exclusive* bargaining agent even though they prefer another union or no union at all. The purpose of the Board is to protect the bargaining rights of employees, not the bargaining rights of union. See National Labor Relations Board v. S. S. Logan Packing Company, 386 F.2d 562, 564 (4th Cir. 1967) supra. The bargaining interests of a union are protectable only insofar as those interests coincide with the interests of the employees, 29 U.S.C. §§ 151, 157, 158(a) (3), 158(b) (1) (A), 158 (b) (7); that coincidence of interests cannot be determined until a majority of the employees clearly express their desire that the union be their bargaining representative. We find that in this case a re-run election would more clearly express the employees' desires, and therefore deny enforcement of the Board's bargaining order.

The Board's order finding Ben Duthler, Inc., and Family Foods, Inc., guilty of coercive interrogations and threats in violation of Section 8(a) (1) must be enforced without modification since the

Trial Examiner's findings were not contested before the Board. Enforcement of the Board's order finding Ben Duthler, Inc., guilty of unlawfully refusing to bargain with Local 20 in violation of Section 8(a) (1) and (5) and ordering Ben Duthler, Inc., to bargain with Local 20 upon demand is denied.