**TERRELL MACHINE COMPANY,**
Petitioner,

v.

**NATIONAL LABOR RELATIONS BOARD,** Respondent.

No. 13371.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1969.

Decided Jan. 20, 1970.

William W. Sturges, Charlotte, N. C. (Weinstein, Waggoner, Sturges & Odom, Charlotte, N. C., on the brief), for petitioner.

Thomas E. Silfen, Atty., N. L. R. B. (Arnold Ordman, General Counsel, Dominick L. Manoli, Associate General Counsel, Marcel Mallet-Prevost, Asst. General Counsel, and John D. Burgoyne, Atty., N. L. R. B., on the brief), for respondent.

Before SOBELOFF and WINTER, Circuit Judges, and HARVEY, District Judge.

WINTER, Circuit Judge:

Terrell Machine Company seeks to have set aside an order of the National Labor Relations Board based on a finding that it violated §§ 8(a) (1) and 8(a) (5) of the National Labor Relations Act by refusing to bargain collectively with the representative of its employees and by unilaterally granting a wage increase to its employees after its refusal to bargain. Despite the company's assertions to the contrary, the Board found that, on the crucial date, the union continued to represent a majority of the employees and that the company had no good faith doubt as to that majority. From the record as a whole, those findings are supported by substantial evidence. It

follows that the refusal to bargain and the subsequent unilateral grant of a wage increase were violative of the Act, so that as prayed by the Board the order will be enforced.

Terrell admits a refusal to bargain on July 3, 1967, after several bargaining sessions. Its justification was that either the union did not represent a majority of the employees on that date or the company had a good faith doubt as to that majority status.

The trial examiner found that on July 3, 1967, the union possessed dues cards and authorization cards from forty-four employees out of a bargaining unit of ninety employees. He concluded that the union thus had no majority. The examiner, however, held that the date July 3 was not crucial and found an unfair labor practice because there was in fact a majority on July 31. On theory, but not result, the Board reversed, holding that July 3 was the crucial date, but that actual membership in the union on July 3 was not the dispositive fact. To find continued majority status on July 3, the Board invoked the rebuttable presumption that majority status continues after expiration of the first year following certification and concluded that a showing of actual membership or payment of dues is not the equivalent of establishing the number of employees who desire representation by the union so as to rebut the presumption.

▮▮▮▮ The Board was plainly correct. Upon expiration of the original certification year, a rebuttable presumption of representative status exists, and it is sufficient to establish *prima facie* a continuing obligation to bargain. NLRB v. Rish Equipment Company, 407 F.2d 1098 (4 Cir.1969). See also, NLRB v. Little Rock Downtowner, Inc., 414 F.2d 1084 (8 Cir.1969); NLRB v. Gulfmont Hotel Co., 362 F.2d 588 (5 Cir.1966). The presumption may be overcome, according to these authorities, if the employer demonstrated that the union, in fact, no longer enjoyed majority support on the date of the refusal to bargain, or that the refusal to bargain was predicated upon a reasonably grounded good faith doubt of majority support. Here neither basis for overcoming the presumption was established.

A showing that less than a majority of the employees in the bargaining unit were members of the union or paid union dues was not the equivalent of showing lack of union support. Manifestly, in the absence of a closed shop agreement—and during the period in question, North Carolina had a state "right to work" law—many employees are content neither to join the union nor to give it financial support but to enjoy the benefits of its representation. Nonetheless, the union may enjoy their support, and they may desire continued representation by it. NLRB v. Gulfmont Hotel Co., supra. *Cf.* NLRB v. Darlington Veneer Co., 236 F.2d 85 (4 Cir.1956).

▮▮▮▮ The Board's conclusion that Terrell did not have a good faith doubt of continued majority support is fully supported by the record as a whole. Because Terrell did not know of the actual minority of union members until after its refusal to bargain, it cannot rely on that data to support a good faith doubt of continued majority support. Instead, it relied solely on isolated reports from vague or unidentified sources that several employees did not think the union was sufficiently active and wanted another union, that union membership was between 38 and 40 and an incorrect assertion by a union representative that the bargaining unit numbered only 65 to 70 employees. These, we conclude, could not reasonably give rise to doubt as to continued majority support especially when Terrell contemporaneously received contradictory reports that union adherents were up to "100 per cent" and that the union had obtained "60 new members."

▮▮▮▮ Coupled with the lack of a reasonable basis to give rise to doubt was affirmative evidence of lack of good faith on the part of Terrell. Although Terrell publicly stated that it was refusing to bargain only until the union's majority status was proved, it refused to

consider the union's proffer to exhibit its record of members and authorizations as evidence of its legitimacy. Terrell never petitioned the Board for a new election, and its unilateral grant of a wage increase in August, 1967, after its previous statement made before it withdrew recognition that it could not consider a wage increase until October, are further evidence of bad faith.

Since recognition was improperly withdrawn, the unilateral grant of the wage increase was in itself a violation of the Act. Fibreboard Paper Products Corp. v. NLRB, 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964); NLRB v. Katz, 369 U.S. 736, 82 S.Ct. 1107, 8 L. Ed.2d 230 (1962).

Enforcement granted.