**NATIONAL LABOR RELATIONS BOARD, Petitioner,**

v.

**DAYTON MOTELS, INC., d/b/a Holiday Inn of Dayton, Respondent.**

**No. 72–1078.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 11, 1972.

Decided Feb. 14, 1973.

---

21. E.1, pp. 84, 85, and 87.

22. E.1, p. 93.

Edwards, Circuit Judge, filed opinion concurring in part and dissenting in part.

## 330

John C. Getreu, Director, Region 9, N. L.R.B., Cincinnati, Ohio, Jay E. Shanklin, N.L.R.B., Washington, D. C., for petitioner; Marcel Mallet-Prevost, Asst. Gen. Counsel, Robert A. Giannasi, N.L.R.B., Washington, D. C., on brief.

Charles A. Lawrence, Jr., Memphis, Tenn., for respondent; Elbert H. Coles, McKnight, Hudson & Coles, Memphis, Tenn., on brief.

Before WEICK, EDWARDS and MILLER, Circuit Judges.

WEICK, Circuit Judge.

This case is before the Court on the Board's application for enforcement of its order reported at 192 NLRB No. 112, against Dayton Motels, Inc., doing business as Holiday Inn of Dayton (Company), which application was filed pursuant to Section 10(e) of the National Labor Relations Act (Act) as amended.

29 U.S.C. § 160(e). The Company has cross-petitioned for non-enforcement.

The Board found that the Company, shortly prior to the expiration of the collective bargaining agreement with the Union, violated Section 8(a)(1) of the Act by interrogating and threatening employees, by soliciting employees to repudiate the Union, by soliciting an employee not to attend a Union meeting, and by promising benefits to employees who did not engage in the strike called by the Union. The Board also found that the Company violated Section 8(a)(5) of the Act by withdrawing recognition from the Union and by thereafter refusing to bargain with the Union as the representative of its employees.

The Board ordered the Company to cease and desist from its unfair labor practices, to reinstate discharged striking employees, to bargain with the Union as the exclusive representative of its employees, and to post appropriate notices.

We uphold the Board's order only with respect to the Section 8(a)(1) unfair labor practices. We decline to enforce the order of the Board with respect to the Section 8(a)(5) alleged violation, and remand for further proceedings.

## SECTION 8(a)(1) VIOLATIONS

We are of the opinion that, on the record before us, the findings of the Board with respect to Section 8(a)(1), violations are supported by substantial evidence. NLRB v. Howell Automatic Mach. Co., 454 F.2d 1077 (6th Cir. 1972).

The only colorably valid attack that the Company makes against the finding of Section 8(a)(1) violations is that the predominance of activities was attributable to Collins and Branham, neither one of whom was a supervisor. Simply stated, the Company's position is that these activities took place near the end of the term of the agreement, and regardless of the anti-union nature of these employees' activities, their acts cannot be imputed to the Company since they were

not supervisory employees of the Company.

■ The argument falls short of a successful attack on the Section 8(a)(1) violations found by the Board, for two reasons. First, the activities of the Executive Housekeeper, who was a supervisor, alone would be sufficient to support a finding that Section 8(a)(1) was violated by the Company. Second, strict principles of agency are not applicable where management uses an employee who is a union member, for effectuating its own interests. If there is a connection between management and the employee's actions, either by way of instigation, direction, approval, or at the very least acquiescence, then the acts of the employee will be imputed to the Company. Boyle's Famous Corned Beef Co. v. NLRB, 400 F.2d 154 (8th Cir. 1968).

■ The Board found that employees Collins and Branham had close ties with management; in fact, they customarily delivered to other employees work instructions from management. Furthermore, while the Company perhaps did not actually direct the activities of Collins and Branham, at least it acquiesced in the anti-union efforts Thus, under the expanded agency principles applicable to Section 8(a)(1) the acts of these union-members employees are imputed to the Company and support the Board's order directed to these activities.

## SECTION 8(a)(5) VIOLATIONS

In June, 1970, three months prior to expiration of the collective bargaining agreement with the Union, the Company received a request from the Union to negotiate for a new collective bargaining agreement. The Company did not respond to this request and thereafter refused to meet with the Union for purposes of bargaining. However, on September 16, 1970, the expiration date of the agreement, a Union representative came to the Inn and met with the Company's attorney. In the course of this meeting the Company's attorney advised the Union representative of the Company's position, that the Union did not represent a majority of its employees.

It was then suggested by the Company's attorney that an election be conducted in order to give its employees an opportunity to express their desires concerning representation by the Union. This proposal was rejected by the Union representative. On the day following, the Union called a strike against the Company.

The Board found that the Company violated Section 8(a)(5) of the Act by refusing to bargain with the Union in June, 1970. The validity of this finding of the Board (and the resultant order of the Board that the Company bargain with the Union) depends on (1) whether the Union actually represented a majority of the employees, or (2) whether the Company had a good-faith doubt of the Union's majority status when it refused to bargain.

■ In order to establish that an employer's withdrawal of recognition and refusal to bargain with an incumbent union transgresses Section 8(a)(5) of the Act, the burden of proof is upon the Board to show that the union actually represented a majority of the employees in an appropriate unit. Machinists Lodges 1746 & 743 v. NLRB, 135 U.S. App.D.C. 53, 416 F.2d 809 (1969).

Failure to prove a majority-status of the Union relieves an employer of any duty to bargain. Maphis Chapman Corp. v. NLRB, 368 F.2d 298, 303 (4th Cir. 1966).

Furthermore, even if the Union is proved to be actually representative of a majority, the employer is not guilty of a Section 8(a)(5) violation if the employer had a reasonably-grounded belief that the Union did not represent an uncoerced majority of its employees. Pulley v. NLRB, 395 F.2d 870 (6th Cir. 1968); NLRB v. John S. Swift Co., 302 F.2d 342 (7th Cir. 1962). A good-faith doubt exculpates the employer even if the Union in fact represented a majority

of the employees. NLRB v. Ben Duthler, Inc., 395 F.2d 28 (6th Cir. 1968).

The 1967 agreement between the Company and the Union is relevant to the two aspects of Section 8(a)(5) above stated. First, the Board did not order that an employee vote should be taken in order to determine whether the Union actually represented a majority of the employees; rather, the Board relied on the doctrine that an existing agreement creates a presumption of majority status of the Union. Second, the Board excluded evidence offered by the Company tending to prove that the collective bargaining agreement was procured by means of coercive tactics of a company supervisor who was collaborating with the Union, and evidence tending to prove the fraudulent concealment of this fact from the Company by the Union when the Union presented the authorization cards to the Company to persuade the Company to recognize the Union. The reason given by the Board for exclusion of the evidence was that it also proved an unfair labor practice of the Union, proof of which was barred by the six-months' time limitation in Section 10(b) of the Act.[1]

This same statute precluded the Company from taking any action after it discovered the complicity of its supervisor and the fraud of the Union, when such discovery was made more than one year after the agreement was signed.

■ There seems to be no question but that the expiring agreement does give rise to a rebuttable presumption of majority status of the Union. Terrell

Mach. Co. v. NLRB, 427 F.2d 1088 (4th Cir. 1970).

However, giving full recognition to the weight of the presumption, this does not help the Board because even if in fact the Union actually represented a majority of employees in the bargaining unit, the Company would still have a complete defense if it had a good-faith doubt about such representation. NLRB v. Ben Duthler, Inc., 395 F.2d 28 (6th Cir. 1968).

Section 10(b) of the Act provides in part as follows:

"  .   .   . *Provided,* That no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board  .   .   ."

Literally, this section applies only to the filing of complaints with the Board. On its face it appears to be a statute of limitations on the institution of proceedings directed at unfair labor practices, and not to have any application to the defense of an unfair labor practice charge. However, it was recognized that the policy [2] of the preventing stale unfair labor practice charges under Section 10(b) of the Act could easily be circumvented if the limitations provision was read narrowly.

Accordingly, the Supreme Court expanded considerably the effect of Section 10(b) of the Act, in Local Lodge No. 1424 (Bryan Mfg. Co.) v. NLRB, 362 U.S. 411, 80 S.Ct. 822, 4 L.Ed.2d 832 (1960). In that case the company had committed a putative unfair labor practice by signing a collective bargaining

---

1. Certainly the fact of supervisory coercion is very relevant to a decision as to whether the Union was the choice of a majority of employees. It has been consistently held that, absent a Sec. 10(b) problem, there can be no refusal to bargain in violation of Sec. 8(a)(5) if the purported representative of the employees was not *freely* designated as such by a majority of the employees. NLRB v. Heck's, Inc., 386 F.2d 317 (4th Cir. 1967); NLRB v. H. Rohtstein & Co., 266 F.2d 407 (1st Cir. 1959).

2. The Report of the House Committee on Education and Labor on H.R. 3020, states: "It has not been unusual for the Board in the past to issue complaints years after an unfair labor practice was alleged to have occurred, and after records have been destroyed, witnesses have gone elsewhere and recollections of the events in question have become dim and confused." Rep.No.245, 80th Cong. 1st Sess., p. 40.

agreement with a union which did not in fact represent a majority of the employees at that time. More than six months subsequent thereto, an unfair labor practice charge was filed with the Board. The complaint alleged that an independent unfair labor practice had been committed within the six-month-limitation period by the company's continued operation under the invalid agreement. The Court recognized that while the enforcement of the supposedly-invalid agreement was in a sense an independent unfair labor practice, it was entirely dependent on the initial time-barred unfair labor practice, and thus it was, in effect, a *resurrection* of a stale claim. The Court held that evidence of the time-barred unfair labor practice was inadmissible, and that the complaint based on the enforcement of the agreement must therefore fail.

In our case, however, the Company's defense is not dependent on the time-barred unfair labor practice. The evidence was offered, to be considered along with other evidence, of its good-faith doubt about the majority status of the Union.

*Bryan, supra,* cannot be read as preventing the use of all evidence relating to events transpiring more than six months prior to the filing of an unfair labor practice charge. Justice Harlan so stated in the opinion which he wrote for the Court:

"It is doubtless true that § 10(b) does not prevent all use of evidence relating to events transpiring more than six months before the filing and service of an unfair labor practice charge. However, in applying rules of evidence as to the admissibility of past events, due regard for the purposes of § 10(b) requires that two different kinds of situations be distinguished. The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose § 10(b) ordinarily does not bar such evidentiary use of anterior events." (362 U.S. at 416, 80 S.Ct. at 826)

Thus, these earlier events may be utilized to shed light on what occurred within the limitation period. In the present case these events were admissible as background evidence reflecting on the mental attitude or good-faith doubt of the Company officials that the Union ever represented a majority of its employees. In no way does this constitute an attack on the validity of the expiring agreement or on the presumption created thereby, which attack was barred by Section 10(b) of the Act. All that is shown is that the circumstances surrounding the agreement gave the Company good reason to believe that the Union never did represent the uncoerced choice of a majority of its employees. The fact that this evidence could have been the basis of an unfair labor practice charge in 1967 is coincidental and ought not to render the evidence inadmissible for another purpose.[3]

If the Board's argument in the present case were adopted, employers, in reaching a rational decision as to whether the Union continued to represent a majority of its employees, could not consider any events which occurred more than six months previously, if those events might possibly have constituted an unfair labor practice.

Hence, as the Board would have it, an employer who had to decide, at the expiration of an initial contract, whether to continue recognition of an incumbent Union, would have to approach the problem in the following manner: The em-

3. The doctrine that evidence inadmissible for one purpose can be admitted for another purpose is firmly established in the law. Livergood v. S. J. Groves & Sons Co., 361 F.2d 269, 274 (3d Cir. 1966); 1 Wigmore, Evidence, Sec. 13 (3d ed. 1940).

ployer would first look at the events surrounding the initial recognition of the Union to see if those events could cast doubt on the representative status of the Union. He would then have to decide whether those facts also would have supported an unfair labor practice charge. If they did not reach the level of proscription under the Act, he could take them into account. If they constituted an unfair labor practice, he could not use them in making his decision.

Such an artificial standard is obviously impractical and one which is well nigh impossible to be complied with. It would substantially impair, if not obliterate, the efficacy of the defense of good-faith doubt. *Bryan* did not involve the exclusion of evidence of good-faith doubt. There the attack was made on the validity of the agreement.

Reliance on NLRB v. United Mine Workers of America, 422 F.2d 115 (6th Cir. 1969), is misplaced. In that case it was sought in a Section 7 charge to invalidate the agreement because such agreement had been procured by an unfair labor practice. This was a direct attack on the agreement, which attack was not made within the time specified in Section 10(b) and was therefore barred.[4]

■ As pointed out above, we may assume that the expiring agreement in the present case was perfectly valid. It did not deprive the Company of its right, when asked to negotiate a new agreement upon expiration of the old one, to show that it had a good-faith doubt about the Union ever representing a majority of its employees.

NLRB v. Tragniew, Inc., 470 F.2d 669 (9th Cir., decided Sept. 8, 1972) does not help the Board, but on the contrary it supports the Company's position. There the Court said:

"As contended by Tragniew, Section 10(b) does not bar all evidence of events outside the statutory six-month period, which bears upon lack of majority representation within that period.[4] It was permissible for the Trial Examiner to admit evidence as to the manner in which Local 399 *obtained* and *operated* under its collective bargaining agreements." (Emphasis added).

This is exactly what the Company, by the excluded evidence, attempted to prove. Footnote 4 in *Tragniew* cites the language of *Bryan* which we previously quoted.

The Board relies on NLRB v. Denham, 469 F.2d 239 (9th Cir. 1972), decided by the Ninth Circuit about two months after *Tragniew*. *Denham* goes further than any previous decision which has come to our attention. It holds that events within the Section 10(b) limitation period are inadmissible for any purpose, including consideration on the issue of good-faith doubt. We do not believe that *Bryan* supports that conclusion.

In any event, irrespective of *Tragniew* and *Denham*, it was competent for the Company to show that it discovered, more than one year after the collective bargaining agreement was signed, the complicity of its supervisor and the concealment by the Union of its misconduct.

In NLRB v. Patterson Menhaden Corp., d/b/a Gallant Man, 389 F.2d 701 (5th Cir. 1968), the Court held that statements by a boat captain that he would not hire crew members for the next season if they voted for the union, which statements were barred by Section 10(b) to establish an unfair labor practice, were nevertheless admissible as background evidence to corroborate other evidence offered by the Board. While

4. This result was also reached in a number of other cases where a union sought to defend against a Sec. 8(b)(7) charge of unlawful recognitional picketing by attacking the underlying time-barred agreement between the company and the incumbent union. International Hod Carriers, etc. Local 1298 (Roman Stone Const. Co.), 153 NLRB 659 (1965); Lane-Coos-Curry-Douglas Counties Bldg. & C.T.C. v. NLRB, 415 F.2d 656 (9th Cir. 1969).

this case permitted the Board to make use of events barred by Section 10(b), there is no good reason why the same rule should not extend to the employer.

The Court stated:

"The Board held that these pre-election statements could not constitute an 8(a)(1) violation since they occurred more than six months before the charge was filed. 29 U.S.C.A. § 160(b). They were properly used, however, as *background evidence* to corroborate other evidence adduced with respect to the pending and viable charges which pending charges might in and of themselves constitute an unfair labor practice depending on employer motive." (389 F.2d at 702–703) (Emphasis added).

In other words, the evidence was used only to "shed light" on a present unfair labor practice charge.

Similarly, the Company in the present case seeks only to shed light on its good-faith doubt defense to the unfair labor practice charge. The Board erred in excluding such evidence. Accordingly, we remand this case to the Board with instructions to receive evidence on the circumstances surrounding the procurement of Union authorization cards in 1967, and to consider such evidence, along with other events subsequent thereto, on the issue of whether the Company did in fact have a good-faith doubt as to the majority status of the Union.

Enforcement granted only as to the Section 8(a)(1) violation; enforcement denied as to Section 8(a)(5), and remanded for further consideration.

EDWARDS, Circuit Judge, concurring in part and dissenting in part.

In this case respondent company and the union entered into a labor agreement to run for three years, beginning September 16, 1967. Three months before the date for expiration of the agreement, the union requested negotiations for renewal, and the company informed it that it would no longer recognize the union as bargaining representative for its employees, since it felt the union did not represent a majority. Coincidentally there were numerous efforts by two supervisory employees to persuade the employees to sign statements indicating that they repudiated the union.

At the expiration of the agreement, the union called a strike and filed unfair labor practice charges, claiming 8(a)(1) (coercion) and 8(a)(5) (refusal to bargain) violations. 29 U.S.C. § 158(a)(1), (5) (1970). The Hearing Examiner who heard the testimony found 8(a)(1) violations in the interference and coercion by the supervisory employees, and the Board seeks enforcement of same. The opinion of the court finds substantial evidence to support these findings and grants enforcement of the 8(a)(1) order, and I concur.

The real dispute in the case, however, concerns respondent's contention that it was entitled to show at the hearing before the Hearing Examiner that the original agreement of September 16, 1967, was procured as a result of the influence of a supervisory employee who it is claimed organized the employees into the union concerned. The Hearing Examiner refused to admit this evidence on the basis of Section 10(b), 29 U.S.C. § 160(b) (1970). This section provides that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge with the Board . . . ."

On its face this section simply bars complaints pertaining to unfair labor practices over six months old. But the United States Supreme Court has interpreted it also as a rule of evidence concerning the admissibility of past events which would constitute unfair labor practices.

In the *Bryan Manufacturing Co.* case Justice Harlan spelled out the applicable Supreme Court rule:

It is doubtless true that § 10(b) does not prevent all use of evidence relating to events transpiring more than six months before the filing and

service of an unfair labor practice charge. However, in applying rules of evidence as to the admissibility of past events, due regard for the purposes of § 10(b) requires that two different kinds of situations be distinguished. The first is one where occurrences within the six-month limitations period in and of themselves may constitute, as a substantive matter, unfair labor practices. There, earlier events may be utilized to shed light on the true character of matters occurring within the limitations period; and for that purpose § 10(b) ordinarily does not bar such evidentiary use of anterior events. The second situation is that where conduct occurring within the limitations period can be charged to be an unfair labor practice only through reliance on an earlier unfair labor practice. There the use of the earlier unfair labor practice is not merely "evidentiary," since it does not simply lay bare a putative current unfair labor practice. Rather, it serves to cloak with illegality that which was otherwise lawful. And where a complaint based upon that earlier event is time-barred, to permit the event itself to be so used in effect results in reviving a legally defunct unfair labor practice. Local 1424, IAM v. NLRB (Bryan Mfg. Co.), 362 U.S. 411, 416–417, 80 S.Ct. 822, 826–827, 4 L.Ed.2d 832 (1960). (Footnote omitted.)

The rule of the *Bryan Mfg. Co.* case has been extended by this court and others to apply to bar evidence sought to be introduced to defend alleged unfair labor practices. NLRB v. District 30, UMW, 422 F.2d 115 (6th Cir. 1969), cert. denied, 398 U.S. 959, 90 S.Ct. 2173, 26 L. Ed.2d 543 (1970); NLRB v. Tragniew, Inc., 470 F.2d 669 (9th Cir. 1972); Lane-Coos-Curry-Douglas Counties Bldg. v. NLRB, 415 F.2d 656, 659, n. 7 (9th Cir. 1969).

The crucial point in our present case is that the evidence as to which the court remands this case is clearly evidence of "a legally defunct unfair labor practice" and hence barred by the language employed above by Mr. Justice Harlan to describe "the second situation."

A labor agreement, once negotiated, is entitled to a presumption of validity and there is a presumption that once a union majority has been recognized, it continues until there is proof that the majority has been dissipated or that the employer has "a reasonably grounded good faith doubt of [the union's] majority support." Terrell Machine Co. v. NLRB, 427 F.2d 1088, 1090 (4th Cir.), cert. denied, 398 U.S. 929, 90 S.Ct. 1821, 26 L.Ed.2d 91 (1970); Bally Case & Cooler, Inc. v. NLRB, 416 F.2d 902 (6th Cir. 1969), cert. denied, 399 U.S. 910, 90 S.Ct. 2201, 26 L.Ed.2d 562 (1970). Without the admission of the evidence of the claimed invalidity of the original agreement, the Board's finding of an unfair labor practice in respondent's refusal to negotiate is clearly supported by substantial evidence—a conclusion which I do not believe my colleagues dispute.

I would grant enforcement of the 8(a)(5) order also.