NATIONAL LABOR RELATIONS BOARD, Petitioner,

v.

PENNCO, INC., Respondent.

No. 80–1654.

United States Court of Appeals, Sixth Circuit.

March 16, 1982.

Rehearing Denied April 8, 1982.

Certiorari Denied Nov. 8, 1982.

See 103 S.Ct. 355.

Elliott Moore, Deputy Associate Gen. Counsel, N.L.R.B., David Fleischer, Washington, D. C., for petitioner.

Gregory L. Monge, Van Antwerp, Hughes, Monge & Jones, Ashland, Ky., for respondent.

Before BROWN and KENNEDY, Circuit Judges and CHURCHILL,* District Judge.

## ORDER

The Board petitions for enforcement of its order requiring the respondent herein to bargain with the Communications Workers of America ("Union") and to cease and desist from unfair labor practices. All of the relevant facts were stipulated to by the parties below. The issue raised is whether the respondent demonstrated a good faith belief that the Union no longer represented a majority of Pennco's employees when it withdrew recognition of the Union. If the respondent failed to demonstrate this good faith belief, then it is admitted by both sides that the remedial measures ordered were within the range of options available to the Board.

On October 21, 1976, an election was held at the Pennco plant in Kentucky. The Union won that election by 114 to 62. The Union was certified by the Board on November 1, 1976. Negotiations for a new contract lasted from December, 1976 through September 21, 1977, at times with the assistance of a federal mediator. May 18, 1977, 109 employees began an economic strike and set up a picket line. The strike continued for all relevant times herein. The picket line engendered violence and property damage on more than one occasion and finally a restraining order was issued on July 18, 1977, preventing more than two picketers from picketing at any one time. Three and a half months later, on November 3, 1977, Pennco withdrew recognition from the Union.

Before the strike began, there were 173 members of the bargaining unit. One hundred and nine employees struck. During the strike, Pennco advised striking employees that they would be permanently replaced. In addition to replacing striking workers, Pennco hired additional workers so that by November 3, 1977, the date of withdrawal, there were 257 employees on Pennco's payroll. Of these 257 employees, 47 were actively working on the date of the strike. The strike continued until September 15, 1978, when 42 strikers unconditionally offered to return to work.

The facts as outlined above constituted Pennco's claim that it entertained a good faith belief that the Union no longer represented a majority of the bargaining unit.

* The Honorable James P. Churchill, United States District Court for the Eastern District of Michigan, sitting by designation.

Pennco argues that it is appropriate for it to conclude that the original employees who had all along crossed the picket line, and the employees who replaced the strikers, would not support a Union which fomented violence on a picket line they had to cross each morning. The number of replacements was greater than the number of strikers. Furthermore, Pennco argues, the interests of the two groups—strikers and workers—were diametrically opposite to one another since returning strikers would take the jobs of the replacements.

The Board, on the other hand, argues that it has always maintained a presumption that new hires support the union in the same percentage as those they have replaced and this case presents no justification for departing from that presumption. The Board also raises a number of policy arguments supporting its contentions, including the desirability of unfettered employee choice of a bargaining representative, stability of bargaining relationships and industrial stability. Finally, the Board correctly points out that the failure to join an economic strike may not indicate a lack of support for the union, but rather may demonstrate employees' economic concerns.

■ The broad contours of the law in this area are well settled. It is clear that a union is irrebuttably presumed to have majority status for one year following its certification. After the expiration of this year, a rebuttable presumption of majority status ensues. The employer is entitled to withdraw recognition in this period if he can show that the majority status is no longer valid or if he has a bona fide belief that the union no longer has the support of a majority of employees. *N.L.R.B. v. Windham*, 577 F.2d 805 (2d Cir. 1978). This good faith belief must be supported by objective considerations which are clear, cogent, and convincing. However, subjective evidence may be used to bolster the argument that good faith doubts exist. *Pioneer Inn Associates v. N.L.R.B.*, 578 F.2d 835, 839 (9th Cir. 1978). The relevant date to look to in determining the bona fides of the employer's doubts is the date that recognition is withdrawn; subsequent events cannot validate an improper withdrawal of recognition. *Windham, supra; N.L.R.B. v. Washington Manor, Inc.*, 519 F.2d 750, 753 (6th Cir. 1975); *Rogers Manufacturing Co. v. N.L.R.B.*, 486 F.2d 644, 647 (6th Cir. 1973), *cert. denied*, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 288 (1974). The question of the reasonableness of the employer's doubts is one of fact. *Windham, supra*, at 811.

■ The Board, in arguing that the employer has not met his burden of demonstrating a good faith doubt, wishes to rely upon its presumption that new hires support the union in the same percentage as those they replaced. Pennco, in arguing that its evidence demonstrates a good faith doubt, wishes us to adopt a different presumption, that is, that new hires be presumed not to support a union when violence occurs on the picket line. We expressly decline to adopt either presumption for neither is justified under this set of stipulated facts. However, since we also find that Pennco has not adequately met its burden of demonstrating its good faith belief that the Union had lost its majority status, we enforce the Board's order.

Under the facts as stipulated, the picket line violence ended approximately three and a half months before the withdrawal of recognition. Thus, it is impossible to attribute to those who crossed the picket line an anti-union animus on November 3, 1977. In fact, we do not know how many of the 257 employees working on that date when recognition was withdrawn had been working during the violent picket line episode. We leave to another day the case where picket line violence occurs close to the day of withdrawal. Another distinctive factor in the instant case is the number of replacements that had been hired during the period of the strike. Of the 257 replacements, at most 109 would lose their job if the strike was settled. There is no indication that any particular persons in that work force of 257 knew that they would be replaced by a returned striker.

In summary, we do not adopt either one of the presumptions offered to us by the

parties. *See Windham, supra,* at 813. Instead, under the facts of this case, the evidence demonstrated by Pennco is sufficient only to put the parties in equipoise. Yet, equipoise is not enough for Pennco to demonstrate by objective evidence a good faith doubt as to the Union's majority status. Pennco would need some further evidence of union non-support in order to shift the burden to the Board to prove the Union in fact had majority status on the critical day. *See Automated Business Systems v. N.L. R.B.,* 497 F.2d 262 (6th Cir. 1974).

Given the stipulated record in this case, we are of the opinion that the Board's order should be enforced.

Accordingly, it is ORDERED that the Board's order be enforced.