NATIONAL LABOR RELATIONS BOARD, Petitioner (84–5699), Respondent (85–5830), Cross-Petitioner (85–5850),

v.

GENTZLER TOOL AND DIE COMPANY, Respondent (84–5699), Petitioner (85–5830), Cross-Respondent (85–5850).

Nos. 84–5699, 85–5830 and 85–5850.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 6, 1985.

Decided Dec. 16, 1985.

Elliott Moore, Howard E. Perlstein, argued, Deputy Associate Gen. Counsel N.L.R.B., Washington, D.C., Sharon Margolis Apfel, Anthony J. Celebrezze, Cleveland, Ohio, for N.L.R.B.

Harvey B. Rector, Rector and Associates, Brian Rector, Joseph O'Leary, argued, Akron, Ohio, for Gentzler Tool and Die Co.

Before MARTIN, JONES and WELLFORD, Circuit Judges.

PER CURIAM.

We have consolidated cases involving these parties for purposes of appeal. The Board seeks enforcement and Gentzler Tool & Die Corp. (Gentzler) seeks review of two Board decisions. The first decision, 268 N.L.R.B. 330 (11/25/83) issued November 25, 1983, found that Gentzler had violated Section 8(a)(5) of the National Labor Relations Act, 29 U.S.C. § 158(a)(5), by refusing to sign a contract, already agreed upon, in June 1982, by bypassing the Union[1] and dealing directly with employees, and by making unilateral changes in the terms and conditions of employment. The Board ordered Gentzler to cease and desist from these unfair labor practices; to execute the agreed-upon collective bargaining agreement and to give effect to its terms and provisions retroactively to June 1982; to make its employees whole for their loss of wages and other benefits provided for in the agreement during the pertinent period; to reimburse its employees for any monies that they have contributed toward their health and life insurance benefits; and to post an appropriate notice.

The second decision, 275 N.L.R.B. 124 (6/28/85), found that Gentzler violated Section 8(a)(5) and (1) by withdrawing recognition from and refusing to bargain with the Union in January 1984. To reach this second result, the Board reversed the ALJ's dismissal of the complaint. (The ALJ, however, had expressly declined to reach the merits of the complaint). The Board's second order requires Gentzler to cease and desist from the unfair labor practices found; to bargain with the Union upon request, and, if an understanding is reached, to embody the understanding in a signed agreement; and to post an appropriate notice.

**FACTS RELEVANT TO FIRST CASE:**

The following facts are fairly supported by substantial evidence as determined by the ALJ and the NLRB.

In August 1981, the Union was certified by the Board as the exclusive collective bargaining representative of Gentzler's production and maintenance employees. Soon thereafter, the Company and the Union entered into negotiations for a collective bargaining agreement. Throughout these negotiations, Gentzler was represented by an attorney. Union negotiator Jake Adams and three employees, who constituted the employee bargaining committee, as the initial Union bargaining position, gave the Company a model union contract as a guide and a supplemental list of bargaining items. Although the parties discussed their respective positions in detail, the meetings produced negligible results.

---

1. Freight Drivers, Dock Workers and Helpers, Local Union No. 24, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America.

In October 1981, the Company replaced its negotiating attorney with another attorney. At Gentzler's request, the Union prepared a clause on jury duty pay since that issue had not been addressed in the Union's previously submitted written proposals.

At the subsequent bargaining sessions, the Union's written proposals were reviewed item by item. The parties exchanged summaries of matters as they stood and restated their continuing demands. As they proceeded, each made notations that reflected agreements as well as continuing disagreements. When negotiations stalled, the parties agreed to the intervention of a federal mediator. The Union requested a copy of Gentzler's final proposal, which was to be discussed at the first meeting with the mediator. In response to the Union's request, Gentzler furnished a "Company Proposal," which represented its summary of all issues remaining in dispute between the parties.

The "Company Proposal" indicated that the parties had agreed to many Union proposals, with some modifications, except for certain provisions still in dispute, including such major items as union security, dues checkoff, wages, and contract duration, and insurance benefits. This Gentzler proposal indicated that all items except those listed in the first seven paragraphs had been agreed upon by the parties.

The parties made no progress in their meetings with the mediator, with Gentzler essentially maintaining its same position. At the May 1982 meeting, the parties reviewed all issues, regardless of whether there had been previous agreement. Adams informed Gentzler's attorney that he would submit Gentzler's final proposal to the bargaining unit employees for a ratification vote, since it was clear that Gentzler was not going to revise any of its positions. The company attorney encouraged Adams to submit it for a Union vote.

In mid-May 1982, approximately one week after the parties' last meeting with the mediator and nine months after negotiations had commenced, Gentzler's final proposal was ratified by a vote of the union membership. It was then agreed that the Union would have what had been agreed upon printed and prepared for signatures in the form of a contract. Some weeks later the company attorney contacted Adams and told him that Gentzler would not sign the contract, and gave the following reasons: (1) the presence of a typographical error in the contract, (2) execution of the contract could not precede the negotiation of specific work rules, (3) the inclusion of a vacation clause, and (4) the inclusion of both paid jury duty leave and paid funeral leave clause.

Prior to that time, Gentzler employees received as compensation employer-paid health and life insurance. In July 1982, however, without informing or consulting the Union, Gentzler held a meeting with bargaining unit employees and told them that the Company was changing insurance companies becuase of premium increases and that, as a result, the employees would have to contribute toward their insurance coverage. No Union representative was notified about this meeting, or about Gentzler's plans to change insurance benefits. After that time, Gentzler employees began making contributions toward insurance coverage.

The contract draft that Gentzler refused to sign in June 1982 contained provisions concerning employee health and life insurance that did not require employee contributions. At the hearing before the administrative law judge in this case, Gentzler conceded that the changes in insurance made by Gentzler after July 1982 were a "direct flouting of the law and an unfair labor practice."

Based on the foregoing facts, the Board concluded, in agreement with the ALJ, that Gentzler violated Sections 8(a)(5) and (1) of the Act, by refusing since June 1982 to sign the agreed upon collective bargaining agreement and to give effect to its terms and provisions; by dealing directly in July 1982 with its employees, bypassing their established bargaining agent; and by unilaterally changing conditions of employment.

The Board ordered Gentzler to sign the contract (eliminating a conceded typographical error) and to give effect to the agreed terms and provisions retroactively to June 1982; also to make its employees whole for their loss of wages and other benefits, including insurance, provided for in that agreement for the period after June 1982. The Board now seeks enforcement.

### FACTS RELEVANT TO THE SECOND CASE:

The Board found (contrary to the finding of the ALJ) that in March, April, and May 1983, the Union sent letters to Gentzler requesting that it sign the June 1982 contract, which had a May 31, 1983, expiration date, and begin negotiations for a new contract.[2] Gentzler never responded to these requests. On November 29, 1983, the Union (through its attorney) again wrote Gentzler a letter, unanswered, asking that it sign the June 1982 contract.

During January of 1984 the Union again requested that Gentzler bargain with it for a new contract, and also asked that the contract, now expired according to its terms, be signed. Gentzler refused these overtures and its attorney stated that Gentzler would not bargain with the Union for a new contract "because the Union lost its certification" by "failing to contact Gentzler since May or June 1983." Gentzler took the position that it would bargain only if the Union petitioned for and won another Board-conducted election. The Union subsequently filed a petition for a representation election with the Board's Regional Office. On March 2, 1984, the Regional Office responded that it intended to dismiss the petition because the Union's representative status was not in question. It approved the Union's request that the petition be withdrawn.

Thereafter, Gentzler still made no reply to the Union's letters seeking to bargain,

adhering to its position that it would not negotiate because the Union allegedly had "lost" its certification.

Based on these facts, supported we believe by the record, the Board concluded that Gentzler violated Sections 8(a)(5) and (1) of the Act, by withdrawing recognition from the Union on January 24, 1984, and by refusing thereafter to bargain with the Union, since Gentzler "offered no evidence to rebut the presumption of continued majority status" that flowed from the Union's position as "the certified incumbent representative of the unit employees."

This order to bargain is the second for which the Board now seeks enforcement. We grant the Board's petition for enforcement in both cases.

Gentzler asserts, based on facts largely outside the record, that it is in compliance with the Board's orders. It argues that the Board's first order should not be enforced because Gentzler has paid its employees for any losses and restored insurance benefits, and because the record in the second NLRB proceeding allegedly demonstrates that the Union failed to comply with the first order by declining to correct the agreed contract. Gentzler simply presents no coherent claim that the Board's decision is unsupported by substantial evidence in either case.

Gentzler's failure before this court to challenge the Board's orders on the merits may constitute a waiver of its rights to a full review by this court. We affirm the Board's unfair labor practice findings in this case and its remedial orders may be enforced. *NLRB v. Tennessee Packers, Inc., Frosty Morn Division*, 344 F.2d 948, 949 (6th Cir.1965); *NLRB v. Valley Plaza, Inc.*, 715 F.2d 237, 240–41 (6th Cir.1983). That Gentzler claims to have done what the Board directed it to do in the first case is no defense to enforcement. *See Solo Cup Co. v. NLRB*, 332 F.2d 447, 449 (4th Cir.

---

**2.** One of Gentzler's principal contentions on appeal is that this series of letters merely request renegotiation of the contract, rather than signing it.

Although the March and April letters are identical and merely give notice of the Union's "intent to reopen" the June 1982 contract, the May letter clearly requests that Gentzler "sign and return" the enclosed contract.

1964) (citing cases). Changed circumstances asserted by Gentzler do not moot these petitions by the Board for enforcement.

Sections 8(a)(5) and (1) of the Act makes it an unfair labor practice for an employer to refuse to bargain collectively with its employees' chosen collective bargaining representative. As the Board points out, the majority status of the representative is irrebuttably presumed to continue for one year following certification. *Brooks v. NLRB*, 348 U.S. 96, 98–104, 75 S.Ct. 176, 178–82, 99 L.Ed. 125 (1954). As this court has explained:

> The broad contours of the law in this area are well settled. It is clear that a union is irrebuttably presumed to have majority status for one year following its certification. After the expiration of this year, a rebuttable presumption of majority status ensues. The employer is entitled to withdraw recognition in this period if he can show that the majority status is no longer valid or if he has a bona fide belief that the union no longer has the support of a majority of employees. *NLRB v. Windham*, 577 F.2d 805 (2d Cir.1978). This good faith belief must be supported by objective considerations which are clear, cogent, and convincing. However, subjective evidence may be used to bolster the argument that good faith doubts exist. *Pioneer Inn Associates v. NLRB*, 578 F.2d 835, 839 (9th Cir.1978). The relevant date to look to in determining the bona fides of the employer's doubts is the date that recognition is withdrawn; subsequent events cannot validate an improper withdrawal of recognition. *Windham, supra; NLRB v. Washington Manor, Inc.*, 519 F.2d 750, 753 (6th Cir.1975); *Rogers Manufacturing Co. v. NLRB*, 486 F.2d 644, 647 (6th Cir.1973), *cert. denied*, 416 U.S. 937, 94 S.Ct. 1937, 40 L.Ed.2d 288 (1974). The question of the reasonableness of the employer's doubts is one of fact. *Windham, supra*, at 811.

*NLRB v. Pennco, Inc.*, 684 F.2d 340, 342 (6th Cir.), *cert. denied*, 459 U.S. 994, 103 S.Ct. 355, 74 L.Ed.2d 392 (1982). This presumption, standing alone, establishes Gentzler's continuing duty to bargain.

Gentzler improperly withdrew recognition from the Union in January 1984. Gentzler had no justification by reason of its prior dispute and the pending N.L.R.B. case in refusing to negotiate.

Because the Union enjoyed a rebuttable presumption of its majority representation status in January 1984,[3] Gentzler failed in its burden of demonstrating "objective considerations which are clear, cogent, and convincing" that the Union no longer had the support of a majority of employees. *Pennco, supra.*

Enforcement of the Board's orders is accordingly granted.

---

3. The Union was certified in August 1981 as the unit employees' collective bargaining representative.