

1994 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-16-1994

# NLRB v. New Assocs. d/b/a Hospitality Care Center

Precedential or Non-Precedential:

Docket 93-3111

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1994

Recommended Citation

"NLRB v. New Assocs. d/b/a Hospitality Care Center" (1994). *1994 Decisions*. Paper 136.
http://digitalcommons.law.villanova.edu/thirdcircuit_1994/136

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1994 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


Nos. 93-3111 and 3147


NATIONAL LABOR RELATIONS BOARD,

Petitioner in 93-3111,

v.

NEW ASSOCIATES d/b/a HOSPITALITY CARE CENTER,

Respondent.


NEW ASSOCIATES, d/b/a Hospitality Care,

Petitioner in 93-3147,

v.

NATIONAL LABOR RELATIONS BOARD,

Respondent.


On Appeal from a Decision of the
National Labor Relations Benefits Review Board
D.C. Civil Action Nos. 22-CA-17250 and 22-CA-17402


Argued on October 25, 1993


Before:  BECKER, ROTH, and LEWIS, Circuit Judges


(Opinion Filed: September 16, 1994)

Charles P. Donnelly, Esquire (Argued)
Jerry M. Hunter,
 General Counsel
Yvonne T. Dixon,
 Acting Deputy General Counsel
Nicholas E. Karatinos,
 Acting Associate General Counsel
Aileen A. Armstrong,
 Deputy Associate General Counsel
Deborah Schrager, Esquire
National Labor Relations Board
1099 14th Street, N.W.
Washington, D.C.  20570-0001

          Attorneys for Petitioner/
          Cross-Respondent


Elliot J. Mandel, Esquire (Argued)
Peter A. Schneider, Esquire
Carmelo Grimaldi, Esquire
Kaufman, Naness, Schneider & Rosenweig
425 Broad Hollow Road
Suite 315
Melville, NY   11747-4730

          Attorneys for Respondent/
          Cross-Petitioner

OPINION OF THE COURT



ROTH, Circuit Judge:

        The National Labor Relations Board (NLRB or the Board) petitions to enforce its July 6, 1992, order against employer New Associates d/b/a Hospitality Care (Hospitality Care).  The order requires Hospitality Care to recognize 1115 Nursing Home and Hospital Employees Union (the Union), a division of 1115 Joint

Board, as the exclusive bargaining representative of a certain unit of Hospitality Care employees and to cease and desist from certain unfair labor practices. Hospitality Care cross-petitions for review of the order.

The issue for our consideration is whether Hospitality Care was guilty of an unfair labor practice when, due to a pending decertification petition, it withdrew from further collective bargaining and it refused the Union's request for certain employee and financial records. For the reasons set out below, we will deny the NLRB's petition for enforcement of its order, we will grant Hospitality Care's petition for review, and we will remand this case to the NLRB to permit it to determine whether, under the rule we adopt here, the Board chooses to inform Hospitality Care of the percentage of employees who signed the decertification petition.

I.

Hospitality Care operates a nursing home facility in Newark, New Jersey. Through several collective bargaining agreements (CBAs), Hospitality Care has recognized the Union as the exclusive bargaining representative of a unit of Hospitality Care employees. On May 1, 1990, pursuant to the terms of the then existing CBA, the Union sought to reopen and negotiate wages and other general terms and conditions of employment. It asked Hospitality Care for the names, addresses, dates of hire,

categories, and wage rates of all employees covered by the CBA in order to formulate future bargaining demands and to make the employees aware of their eligibility for benefits and raises. Apparently, there was some confusion regarding the request and Hospitality Care did not supply the information.

On June 1, 1990, the Union sent Hospitality Care a list of demands for a new CBA. The list requested a wage increase for each year of the proposed agreement as well as other increases and benefits. Thereafter, the parties conducted three negotiating sessions. At each meeting, Hospitality Care rejected the Union's demands stating that, because it was having difficulty obtaining reimbursement from the state of New Jersey, it needed to have a total wage freeze for the first year of the new agreement. While the Union agreed to wage reductions in the third year, it would not agree to the first year wage freeze.

The parties held their last meeting on August 9, 1990. The Union again requested the employee information it had been seeking since May. Hospitality Care indicated that it was still in the process of compiling the information. The meeting ended without an agreement and without a date for further negotiations.

Shortly after the August 9 meeting, the Union contacted Hospitality Care and requested the employee information as well as permission to audit Hospitality Care's financial records in order to verify that Hospitality Care was unable to afford a

first year wage increase. Despite the Union's repeated requests, Hospitality Care failed to supply any of the information.

On August 23, 1990, a Hospitality Care employee filed a decertification petition with the NLRB asserting that at least thirty percent of the employees no longer recognized the Union as their official bargaining representative. See National Labor Relations Act (NLRA), 29 U.S.C. § 159(c)(1)(A)(ii). Generally, an employee will file such a petition with a Regional Office of the NLRB in order to terminate the recognized union's status as bargaining representative. If the petition is supported by at least thirty percent of the unit employees and if the NLRB finds reasonable cause to believe that there is merit to the petition, the Regional Director will conduct a hearing. Id. at § 159(c)(1). If the hearing demonstrates that there is a serious question of the union's representative status, the NLRB will hold a decertification election within the bargaining unit. Id.

In this case, although the NLRB made an initial determination that the prescribed minimum number of employees no longer supported the Union, it did not release the exact percentage of non-supporting employees to Hospitality Care. As a result, Hospitality Care did not know whether a majority of the employees sought decertification. Hospitality Care withdrew from further collective bargaining based on its assertion that the filing of the petition demonstrated a substantial showing of lack of support for the Union.

On September 12, 1990, while the decertification petition was still pending, the Union filed an unfair labor practice charge with the NLRB. The Union alleged that Hospitality Care had failed to bargain collectively in good faith because it refused to contribute to the Union's funds and to submit accurate lists of employees. After filing the charge, the Union attempted to schedule another bargaining session with Hospitality Care and requested audited financial statements covering several years. At the NLRB hearing, Hospitality Care indicated that it had denied the Union's requests due to the pending decertification petition. Hospitality Care argued that it had properly withdrawn from bargaining because a substantial number of employees no longer recognized the Union as their legitimate bargaining representative.

On September 19, 1991, Administrative Law Judge Fish concluded that Hospitality Care had violated sections 8(a)(1) and (5) of the NLRA, 29 U.S.C. §§ 158(a)(1),(5), by failing to meet and bargain with the Union. Judge Fish found in addition that Hospitality Care had engaged in an unfair labor practice by failing to furnish information relevant to collective bargaining and by refusing to permit an audit of its financial records. Judge Fish recommended that Hospitality Care cease and desist from refusing to bargain collectively with the Union. He held that, upon the Union's request, Hospitality Care should furnish the names, addresses, dates of hire, categories, and wage rates

of unit employees.  Moreover, Hospitality Care should provide the Union with audited financial statements or permit the Union to audit its financial records.  Hospitality Care filed exceptions to Judge Fish's recommended order.

While the NLRB was considering Judge Fish's decision and Hospitality Care's exceptions to it, the parties resumed collective bargaining.  On January 8, 1992, they executed a new agreement effective through December 23, 1995.  The NLRB subsequently issued an order on July 6, 1992, adopting Judge Fish's determination.  Hospitality Care has refused to provide the Union with its audited financial statements or to permit the Union to conduct an audit of its financial records.  Hospitality Care maintains that such information is moot due to the new collective bargaining agreement.  To date, Hospitality Care has not fully complied with the NLRB order.[1]

The NLRB filed an application for enforcement of its order with this Court.  Hospitality Care filed a cross petition for review of the order.  The NLRB has held the decertification petition in abeyance pending the outcome of this case.

II.

---

[1].  We note that Hospitality Care has filed a motion to expand the record to include evidence that it partially complied with the order by providing the Union with, inter alia, the names, addresses, and dates of hire of employees in the bargaining unit. Because the evidence does not influence our decision, we will grant the motion.

The NLRB had subject matter jurisdiction pursuant to section 10(a) of the NLRA. 29 U.S.C. § 160(a). This Court has jurisdiction over both the NLRB's application for enforcement of its final order and Hospitality Care's cross-petition for review pursuant to sections 10(e) and (f) of the NLRA. 29 U.S.C. §§ 160(e),(f).

In reviewing a rule adopted by the NLRB, we will give deference to the Board's interpretation of the NLRA provided that the rule is rational and consistent with the Act. See Fall River Dyeing & Finishing Corp. v. N.L.R.B., 482 U.S. 27, 42 (1987). We will set aside the NLRB's factual findings only if they are not supported by substantial evidence. Systems Management, Inc. v. N.L.R.B., 901 F.2d 297, 300 (3d Cir. 1990) (citing Graham Architectural Products Corp. v. NLRB, 697 F.2d 534, reh'g denied, 706 F.2d 441 (3d Cir. 1983)).

### III.

The NLRA is designed to foster collective bargaining and industrial stability by providing a procedural framework for employers and employees to resolve conflicts and negotiate toward suitable working and contractual conditions. 29 U.S.C. § 157; NLRB v. Pincus Bros., Inc.-Maxwell, 620 F.2d 367, 376 (3d Cir. 1980); Brockway Motor Trucks, Div. of Mack Trucks, Inc. v. NLRB, 582 F.2d 720, 727 (3d Cir. 1978). It expressly confers a duty on employers to bargain in good faith with union representatives. Specifically, section 8 of the Act provides,

(a) It shall be an unfair labor practice for an employer --

> (1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title;. . .[2]

> (5) to refuse to bargain collectively with the representatives of his employees.

29 U.S.C. §§ 158(a)(1),(5). In order to advance the bargaining process, an employer has an affirmative obligation to furnish the recognized employee representative with information relevant to an agreement. NLRB v. Acme Indus. Co., 385 U.S. 432, 435-36 (1967); NLRB v. New Jersey Bell Tel. Co., 936 F.2d 144, 150 (3d Cir. 1991).

In this case, Hospitality Care admits that it refused the Union's requests for employee and financial data. It acknowledges that under certain circumstances such a refusal can constitute a failure to bargain in good faith. See NLRB v. Truitt Mfg. Co., 351 U.S. 149, 152 (1956) (holding that when an employer asserts that he cannot afford to pay a wage increase, the Union has a right to inspect his financial records). See

_____

[2]. Section 7 of the Act states:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection. . . .

29 U.S.C. § 157.

also <u>C-B Buick, Inc. v. NLRB</u>, 506 F.2d 1086, 1091 (3d Cir. 1974) (employer failed to bargain in good faith when it claimed that it could not afford to meet union demands and then refused union's request for financial data); <u>Facet Enters., Inc. v. NLRB</u>, 907 F.2d 963, 980 (10th Cir. 1990) (employer's offer of financial data after it claimed economic hardship was insufficient to meet the good faith bargaining standard because it did not provide a meaningful picture of the employer's financial condition).

Hospitality Care further admits that it withdrew from all negotiations with the Union. While such actions might be considered violations of sections 8(a)(1) and (5) of the NLRA, Hospitality Care argues against enforcement of the instant order stating that it was no longer under a duty to bargain with the Union because the pending decertification petition raised a serious question as to the Union's representative status.[3]

---

[3]. Hospitality Care also contends that the order should not be enforced because the new collective bargaining agreement renders the requested financial information moot. <u>See</u> <u>C-B Buick, Inc. v. NLRB</u>, 506 F.2d 1086 (3d Cir. 1974) (employer not required to comply with union's request for financial information when parties subsequently signed a new collective bargaining agreement and information was deemed irrelevant to that agreement). We decline to exercise jurisdiction over this claim because Hospitality Care had the opportunity to raise the mootness issue during the administrative hearing and failed to do so. <u>See</u> 29 U.S.C. § 160(e) (providing that, absent extraordinary circumstances, a reviewing court shall not consider an objection not raised before the Board). In declining to address this issue, we are in no way making any ruling on the merits of the argument that, under the circumstances of this case, the execution of the new agreement absolved Hospitality Care of any charge of an unfair labor practice that would be otherwise applicable.

Hospitality Care contends that it would be a needless waste of time and expense to continue bargaining for an agreement that could be rendered void if the Union is later ousted in a decertification election.

Hospitality Care urges the court to set aside the instant order and apply the rationale articulated in Telautograph Corp., 199 NLRB 892 (1972). That case addressed factually similar circumstances in which an employer withdrew from bargaining based solely on the filing of a decertification petition. The NLRB concluded that, in the absence of any evidence of employer misconduct, a decertification petition required the employer to refrain from further bargaining because the petition itself signified a genuine question as to the union's representative status. The Board stated that the NLRA's decertification procedure "assures employees the right to determine that a currently recognized union is no longer the majority representative . . .." Id. at 894.

In the years following Telautograph, the NLRB retreated from its bright line rule that an employer could suspend bargaining based on the filing of a decertification petition. See RCA Del Caribe, Inc., 262 NLRB 963 (1982) (filing of a representation petition by an outside union will not permit an employer to withdraw from bargaining with the incumbent union). See also National Cash Register Co., 201 NLRB 1034, 1035 (1973) (where it appears that an employer's unfair labor practice precipitated the

decertification filing, employer must submit some other objective evidence of loss of majority support). The NLRB eventually overruled Telautograph, stressing its concern with promoting increased stability in the bargaining relationship. Dresser Indus., Inc., 264 NLRB 1088 (1982).

Although Dresser involved the same circumstances as Telautograph, the NLRB held in Dresser that an employer could not withdraw from bargaining while awaiting resolution of a decertification proceeding. Id. at 1089. It conceded that suspension of bargaining could be justified if, in addition to the petition, the employer submitted some objective evidence that the union had lost majority support. Id. at 1089 n.7. The petition itself, however, only requires the signatures of thirty percent of the unit employees and therefore, it "indicates nothing more than the disaffection of a minority of unit employees." Id. at 1088. The NLRB concluded that "[a] rule permitting an employer to withdraw from bargaining solely because a decertification petition has been filed does not give due weight to the incumbent union's continuing presumption of majority status and is not the best way to achieve employer neutrality in the election." Id. at 1089.

Based on Dresser, the NLRB found that Hospitality Care committed an unfair labor practice for refusing to provide information to, or bargain with, the Union. The NLRB maintains that Dresser is more effective than Telautograph as a means of

preserving the stability and continuity of the bargaining relationship.

While several Circuits have followed <u>Dresser</u>, <u>see</u> <u>Asseo v. Centro Medico del Turabo, Inc.</u>, 900 F.2d 445, 452 (1st Cir. 1990), <u>Briggs Plumbingware, Inc. v. NLRB</u>, 877 F.2d 1282, 1288 (6th Cir. 1989), <u>St. Agnes Medical Ctr. v. NLRB</u>, 871 F.2d 137, 146 (D.C. Cir. 1989), <u>Bryan Memorial Hospital v. NLRB</u>, 814 F.2d 1259, 1262 (8th Cir.), <u>cert</u>. <u>denied</u>, 484 U.S. 849 (1987), this circuit has not yet addressed the <u>Dresser</u> issue.  But cf. <u>NLRB v. Wallkill Valley Gen. Hosp.</u>, 866 F.2d 632, 636 n.3 (3d Cir. 1989) (after filing of decertification petition with Board, employer may not avoid duty to bargain by demonstrating loss of union majority status resulting from employer's own unfair labor practice).

In order to better understand the impact of <u>Dresser</u>, it is helpful to review current NLRB decertification procedures.[4] According to section 9(a) of the NLRA, a union "designated or selected for the purposes of collective bargaining by the majority of the employees in a unit . . . shall be the exclusive representative[] of all the employees in such unit for the purposes of collective bargaining . . .."  29 U.S.C.

---

[4].  For a general discussion of the decertification process, and what the author considers to be the "chaotic" impact of <u>Dresser</u> on that process, see Timothy Silverman, Comment, <u>The Effect of a Petition for Decertification on the Bargaining Process:  The Reversal of Dresser Industries</u>, 25 San Diego L. Rev. 581 (1988).

§ 159(a). Once a union receives NLRB certification, there is an irrebuttable presumption that the Union is the employee bargaining representative. NLRB v. Frick Co., 423 F.2d 1327, 1330 (3d Cir. 1970); Terrell Mach. Co. v. NLRB, 427 F.2d 1088, 1090 (4th Cir. 1970), cert. denied, 398 U.S. 929 (1970); Celanese Corp. of Am., 95 NLRB 664, 672 (1951). The employer may not refuse to bargain with the representative for one year following the date of certification. NLRB v. Burns Int'l Sec. Servs., Inc., 406 U.S. 272, 279 n.3 (1972); NLRB v. Gissel Packing Co., 395 U.S. 575, 599 n.14 (1969). The presumption of majority status only becomes rebuttable at the end of the certification year or when the collective bargaining agreement has expired. NLRB v. Pennco, Inc., 684 F.2d 340 (6th Cir.), cert. denied, 459 U.S. 994 (1982).

An employer, employee, group of employees, or labor organization may challenge the certified union's representative status by filing a decertification petition with an NLRB Regional Office. 29 U.S.C. §§ 159(c)(1)(A) and (B). Upon receipt of such a petition, the NLRB evaluates whether a "question of representation . . . exists." Id. If its investigation shows that a substantial number of employees support the petition, the Regional Director conducts a hearing. A "substantial number" of the employees supporting such a petition is defined by regulation as "at least 30 percent." 29 CFR § 101.18(a). At the conclusion of the hearing, the NLRB may direct a secret ballot election to

determine the union's representative status. Id. at § 159(c)(1).

In reviewing the petition to determine the percentage of employee support, the Regional Director counts the number of authorization cards or employee signatures in order to determine whether there is a thirty percent showing of interest. Dresser Indus., Inc., 264 NLRB 1088 (1982). It is NLRB policy not to divulge this information to the employer. See Wallkill Valley Gen. Hosp., 866 F.2d at 634 (NLRB refused employer's request for showing of interest information stating that such information was exempt from disclosure under the Freedom of Information Act, 5 U.S.C. § 552). Thus, while the NLRB is aware of whether or not a majority of employees supports a petition, the employer does not have the benefit of this information in assessing whether to continue bargaining with a union whose representative status may be in question.

The NLRB held that Hospitality Care was guilty of an unfair labor practice because it withdrew from bargaining on the basis of the decertification petition alone, without any further objective evidence that the Union had lost majority status. See Dresser, 264 NLRB at 1089 n.7. We conclude that such a result is unsound when considered in combination with the NLRB's refusal to disclose to the employer the percentage of employees who supported the decertification petition. The NLRB possessed the data which would have enabled Hospitality Care to make an informed decision on whether the Union had lost majority support.

Dresser does not overturn the prior Board practice which permitted an employer to withdraw recognition of a union if the employer reasonably believed that a majority of the unit employees no longer supported the union, See Terrell Mach. Co., 173 NLRB 1480, 1481 (1969), enf'd 427 F.2d 1088 (4th Cir. 1970), cert. denied, 398 U.S. 929 (1970). In the same light, the Board continues to acknowledge that, if the decertification petition, signed by a majority of the employees, is filed directly with the employer, the employer has objective grounds to believe that the union no longer has majority support and the employer need no longer recognize the union as the bargaining representative. See National Medical Hosp. of Orange d/b/a Los Alamitos Medical Ctr., 287 NLRB 415 (1987). We conclude that it follows logically that notification to the Board by a majority of unit employees should also constitute objective evidence of a lack of union majority support to the employer in the event that the employer learns of the percentage of support for the petition. With knowledge of majority support for the petition, the employer is justified in ceasing to bargain with the union.

We conclude that such an outcome is consistent with the aim of the NLRA to promote the resolution of conflict in the labor arena. If the employer knows of the filing of the petition but is not aware of the percentage of support, the employer faces the dilemma of either continuing to bargain with the union, which may lose its representational status, or of refusing to bargain and

exposing itself to an unfair labor practice charge. On the other hand, if the union learns of the filing of a decertification petition, the union can delay having to face an election by seeking to bargain, having the employer deny that request, and then filing an unfair labor charge against the employer. The NLRB as a general practice will not schedule an election during the pendency of an unfair labor practice charge. See Telautograph, 199 NLRB at 893 n.4, (citing Columbia Pictures Corp., 81 NLRB 1313, 1314 (1949)). With the filing of such a "blocking charge," a majority of employees who have filed a petition will not receive prompt resolution of the question of representation -- a result which has occurred in this case if in fact a majority of unit employees did sign the petition.

The NLRB contends, however, that the "showing of interest," e.g., the determination by the Board of the percentage of employees supporting the petition, is intended only to enable the Board to determine for itself whether further proceedings are warranted. See In re O.D. Jennings & Co., 68 NLRB 516, 518 (1946) (showing of interest requirement is "to enable the Board to determine for itself whether or not further proceedings are warranted, and to avoid needless dissipation of the government's time, effort and funds"). The NLRB maintains that, if it did supply the employer with the percentage of employees supporting the petition, a strictly administrative requirement could result in the immediate termination of a union and compromise the right

of employees to test the union's support through a decertification election.

We find that this contention lacks merit because the disclosure to an employer of majority support for decertification, if such should be the situation, meets the long recognized Board position that the loss of such majority support warrants the employer's withdrawal of recognition of the union as the bargaining representative and justifies the scheduling of an election. On the other hand, if a majority of the employees have not joined in the petition, bargaining will continue.

Moreover, absent any existent charge that the employer's unfair labor practices have caused the decertification petition to be filed in the first place, we are not persuaded that such disclosure places an undue burden on the NLRB. Because the Regional Director must determine whether the petition is supported by thirty percent of the employees in order to proceed with a hearing and election, it appears that, without any additional administrative costs, he could also calculate whether over fifty percent of the employees advocate decertification.

IV.

Based on the foregoing analysis, we will grant Hospitality Care's petition for review of the NLRB order. We find that the Dresser holding is a rational interpretation of the governing statute, but only in those situations where the employer has

requested from the NLRB information on the percentage of employees who support the decertification petition and the NLRB has informed the employer that the percentage is less than a majority.

We acknowledge, however, that the NLRB may choose to continue its policy of refusing to disclose the percentage of employees supporting a decertification petition.  If this should b